**CHARLES D. KAIER CO., Inc., v. DORAN et al.**

**No. 5959.**

District Court, E. D. Pennsylvania.

June 25, 1930.

B. I. De Young, of Philadelphia, Pa., for plaintiff.

R. H. Woolsey, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge.

We were asked to withhold a ruling in this case pending submission of paper books dealing with the question next mentioned. These paper books are now at hand.

The question is stated to be that of the admissibility of ex parte affidavits at the hearing. The question is discussed as having two aspects: One, the admissibility of the affidavits in the sense of their competency and evidentiary character; the other, in the substantive sense of their relevancy. The very nature of proceedings before the hearer forbids that they should be judged in accordance with the strict rules which pertain to judicial proceedings. One is the rule which has been invoked in support of the rights assured by the Fifth Amendment. This and cognate constitutional provisions can have no application to a proceeding such as that under review. It is really an executive, administrative act which is subject to a review by the courts, and to facilitate this is made to take the form of a judicial trial. In criminal cases a defendant has the right to be confronted by the witnesses against him and no substitute for this is permitted. In no proceeding of a judicial nature can a defendant be deprived of the opportunity to subject testimony evidence to the probe and test of cross-examination. In proceedings of the kind before us, the physical presence of witnesses may be dispensed with, but the substitute must preserve to the opposing party, so far as possible, the features of testimony given by a witness in person. The quoted regulation, section 511 of Regulations 2, gives us a fairly accurate statement of how nearly there should be an adherence to the proceedings of a judicial trial. We find no departure from the proper course in

the instant case which should in itself vitiate the judgment reached.

██ With respect to the second question, we see no substantial difference between the testimony delivered in person and that in the form of ex parte affidavits. The controlling rule in all judicial inquiries is relevancy. What is commonly called hearsay evidence affords a good illustration. A witness who testifies to what some one told him proves only that the statement has been made to him but does not prove the truth of the statement. Sometimes, however, the real fact to be proven is that the statement was made. Again, evidence of the res gestæ is sometimes mistaken for hearsay evidence. What it all comes to is that the evidence, whether in the form of testimony or affidavits, should be given its due weight. If an ex parte affidavit is introduced, when the affiant might have been produced as a witness, this goes to the weight to be given it or the applicant may be given opportunity to produce the affiant for cross-examination. The plaintiff has held that kind of permit which expires with the calendar year. It may be renewed or reissued for another year, but the mode of renewal is the subject of regulation. The administrator passes upon the application in the exercise of his executive judgment. If refused, a hearing is granted at which the facts are developed. The judgment of refusal must then be shown to have support in the facts. The fact, as here, that a brewery has held a permit for many successive years is not only a fact but one of much significance. None the less no faithful administrator can renew a permit which should not be in existence, and should not be forced by the courts to renew it. In the case of an original permit, due weight should be given to the judgment of the administrator who should not be required to assume responsibility for the conduct of a permittee to whom the administrator thinks a permit should not be entrusted. After, however, property rights have grown up under a granted permit, it cannot be revoked without proof of justifying facts, and no just administrator will refuse to renew it without a justifying reason for the refusal. Controversies over permits seem to grow out of the failure on the one hand of the administrator to recognize the limitation upon his powers, and the applicants, on the other, the limitations of their rights. The administrator in no case has an arbitrary power. He is, as we all are, controlled by law and cannot follow any personal whim or caprice. Any applicant for an original permit should be content with the requirement that he must satisfy the reasonable judgment of the administrator of his fitness to hold a permit. Any fair-minded administrator should see that the value of an investment should not be destroyed unless the conduct of the permittee warrants its forfeiture.

██ This long preamble has been indulged in to make clear that although an administrator may well ask to be convinced that an applicant is a fit person to have a permit, after one has been granted, and emphatically after it has been annually renewed for many years, a finding of unfitness must be based upon some conduct of the permittee since the former permits issued. This, of course, would not apply to an ad interim permit issued pending a hearing, which it was for a time the practice to grant. Human nature, and the lessons gathered from a common experience, are always in evidence. It is human to yield to the temptation to make a profit. It is the common belief that breweries put out, whenever they can, so-called "high-powered beer." There is a widespread belief that this is done by transporting such beer to a near at hand place off the brewery premises and having it there secretly bottled and clandestinely distributed. This is the accusation made against this applicant. If the permit were one which was in force until revoked, it has been ruled that the finding of guilt is a judicial finding supported by evidence. If the application is for an original permit, the administrator is given a broader discretion in passing upon the question of fitness. In permits of the kind before us Congress limited them to a year. There must have been a purpose in thus giving a control over renewal permits to the administrator. This places renewals in an intermediary class between those which may be revoked and those granted on original applications. There need not be a judicial finding as in revocation cases, but the executive judgment of refusal must have its basis in the conduct of the permittee. In original permit cases the judgment of unfitness is prospective. Will the permittee properly conduct the business? In renewal cases, the judgment is retrospective. Has anything been done or omitted which warrants a finding of unfitness? With respect to future conduct much must be left to the sound discretion of the administrator. In respect to past conduct, the administrator may well be asked to give a statement of "the reason for the faith which is in him."

We think this record discloses that the administrator has acted in good faith and

upon evidence which might reasonably lead him to the conclusion he has reached.

The bill is dismissed for want of equity.